Minute Order Form (01/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6236 | **DATE** | 12/22/2003 |
| **CASE TITLE** | laborers' Pension Fund vs. McDaniel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, plaintiff's motion for entry of default judgment in sum certain (31-1) is granted. Judgment is entered in favor of the plaintiffs and against defendant Alexander McDaniel in the amount of $7,886.97 ($2,178.49 contributions, liquidated damages and penalties; $5,325.48 attorney's fees and expenses; $383.00 audit costs). Plaintiffs' claims against the current McDaniel Construction Corp. are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 3 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 38 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| OR | courtroom deputy's initials | 03 DEC 23 AM 11:47 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Fund Administrator, )
 )
          Plaintiffs, )
 )
vs. ) Case No. 01 C 6236
 )
ALEXANDER McDANIEL, individually and )
d/b/a McDaniel Construction Corp., and )
McDANIEL CONSTRUCTION CORP., )
 )
          Defendants. )

DOCKETED
DEC 2 3 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The pension and welfare funds of the Construction and General Laborers' District Council of Chicago and Vicinity ("Funds") and their administrator filed suit against Alexander McDaniel and McDaniel Construction Corporation under 29 U.S.C. §§ 1132(e) & 1145 to recover allegedly unpaid contributions and union dues. The Funds' first amended complaint, filed in January 2003, alleged that McDaniel Construction Corporation was incorporated in July 2002 and that McDaniel was the owner and sole proprietor of a predecessor entity bearing the same name. Cplt. ¶ 5. (For the sake of convenience, we will refer to the predecessor entity as "MCC I" and the currently existing entity as "MCC II.") According to the Funds, MCC I was part to a collective bargaining agreement obligating it to make contributions on behalf of

38

employees covered by the agreement to the Funds and to submit monthly reports identifying covered employees and the amounts due. *Id.* ¶¶ 6, 8. The complaint also alleged that MCC I was required to submit its books and records to the Funds on demand to conduct compliance audits and to maintain a surety bond to ensure payment of future wages and contributions to the Funds. *Id.* ¶¶ 9, 10. Despite this, the Funds alleged, MCC I had failed to report and pay contributions for January 2001 and from April 2001 forward, and it had failed to obtain and maintain the required surety bond. *Id.* ¶ 11. The Funds alleged that as a result, McDaniel and MCC II were liable for unpaid contributions, interest, and liquidated damages, as well as audit costs and reasonable attorney's fees and expenses. *Id.* ¶ 13. They sought an order directing the defendants to submit to an audit and a judgment in the amount shown by the audit to be due.

On March 25, 2003, the Court entered an order of default against the defendants for failure to respond to the complaint following service of process and also ordered defendants to submit the relevant books and records to the Funds for an audit. Defendants did not comply, and on June 2, 2003, the Court issued a "body attachment" against Alexander McDaniel after he failed to appear pursuant to a rule to show cause why he should not be held in contempt for ignoring the Court's order. Mr. McDaniel appeared voluntarily on June 11, 2003 and was sworn under oath to answer questions by the Funds' counsel. Mr. McDaniel answered counsel's questions but did not live up to a claimed promise to provide the books and records needed for the Funds to complete the audit. When the Funds' counsel sought a further contempt order, the Court instead directed counsel to prepare a motion for entry of judgment using the records the Funds could obtain. Counsel obtained certain records, procured an audit, and submitted a motion for judgment in mid-October 2003. Mr. McDaniel appeared in Court in late October without

2

counsel and orally contested certain of the assumptions underlying the audit. Specifically, he argued that the company had only intermittently employed persons covered by the collective bargaining agreement with the Laborers' Union and that it had paid contributions when those persons performed covered work. He also provided additional records. The Court set the matter for a prove-up hearing and gave the Funds' counsel the opportunity to review and assess the records.

The prove-up hearing was held on December 5, 2003. The Funds called Joseph Gilleran, a field representative for the Funds. He testified regarding Mr. McDaniel's execution of the pertinent agreements with the Funds and the submission of monthly reports for February through April 2001 in which Mr. McDaniel had represented on behalf of MCC I that no covered work was performed. He said Mr. McDaniel had also advised him that some covered work was performed in January 2001 and had promised to submit a report for that month but had never done so. The Funds also called Richard Wolf, the auditor who had prepared the report that formed the basis for the Funds' request for entry of judgment. Mr. Wolf stated that he had limited records with which to perform the audit. For the year 2002, Mr. Wolf stated, he used the amount of wages paid as reported by MCC II on its federal income tax return for that year, divided the figure by $10 per hour (a figure the Funds are permitted to use when an employer fails to submit reports), and used the results to represent the number of employee hours on work covered by the relevant agreements with the Laborers Union and the Funds. For the year 2001, there was no tax return. Mr. Wolf stated that he used the company's bank account records, backed out any items he could identify as non-payroll expenses, and used the remainder as the amount of wages paid, dividing by $10 per hour to determine the number of hours worked. Mr.

3

Wolf stated that the records provided by Mr. McDaniel in October 2003 were "scattered" and incomplete and did not warrant changes to any of his figures.

Mr. McDaniel also testified at the hearing. He stated that MCC I – the "McDaniel Construction Corporation" on behalf of which he had executed the pertinent agreements – had been dissolved in May 2001. He stated that he had been a minority shareholder of the corporation, which was run by his brother Stephen Alexander McDaniel. Mr. McDaniel took the position that under Illinois law, anyone (including the Funds) that claimed the dissolved corporation owed it money was required to take action within 90 days after the dissolution, which he implied the Funds had failed to do. Mr. McDaniel said that he had submitted his books and records to the Funds even though he believed he had no obligation to do so. MCC II, he said, commenced operations in July 2002.

Mr. McDaniel testified that MCC I had employed a total of nine persons: himself; a secretary, Bernardine Lyon; a receptionist, Velma McDaniel (Mr. McDaniel's wife); a project manager; and five carpenters, who he said were members of a local of the Carpenters Union with which, he said, MCC I had a collective bargaining agreement.

Mr. McDaniel stated that the company had done work between August and October 2001 on a project involving the Ebenezer Church on South Vincennes in Chicago but that work stopped when a check from the contractor bounced in October 2001. The new McDaniel Construction Corporation performed construction work from August 2002 for a number of months on a project for an entity called NHS. Currently, he said, the company had no work.

The Court gave the Funds leave to supplement the record after the hearing with further evidence regarding the dissolution of MCC I. The Funds thereafter submitted a certified copy of

4

a certificate of dissolution from the Illinois Secretary of State reflecting that MCC I had actually been dissolved in September 1998, not May 2001 as Mr. McDaniel had claimed. Thus, the Funds argued, when Mr. McDaniel signed the collective bargaining agreement in January 2001, he effectively did so as an individual sole proprietor, as no corporate entity existed at that time. The Funds argued that Mr. McDaniel was thus liable for unpaid contributions through July 30, 2002, the date on which the successor entity was incorporated.

The Court agrees with the Funds that Mr. McDaniel is personally liable for any unpaid contributions from January 2001, the date he signed the relevant agreements, through July 30, 2002, when MCC II was incorporated. No corporate entity called McDaniel Construction Corp. existed when Mr. McDaniel signed the agreements, as the prior entity had been dissolved by the Illinois Secretary of State more than two years earlier. A corporate officer who is aware of a corporation's dissolution and carries on business under the non-existent corporation's name is personally liable for debts incurred during the period under which he conducts such operations. *See, e.g., Affiliated Corp. v. Buck*, 886 F. Supp. 647, 649 (N.D. Ill. 1995); *Gonella Baking Co. v. Clara's Pasta di Casa, Ltd.*, 337 Ill. App. 3d 385, 786 N.E.2d 1058, 1062 (2003). Despite his testimony at the hearing, the Court finds that Mr. McDaniel knew that MCC I had been dissolved; he had penned a letter, admitted at the prove-up hearing as Exhibit 5, in which he stated that he believed the corporation had been dissolved in 1999.

On the other hand, there is no basis in the record for imposing liability on MCC II, which was incorporated in July 2002. The Funds offered no evidence or argument supporting a claim that the Court should disregard the fact that MCC II is a separate corporation and hold it liable for Mr. McDaniel's debts for the earlier period. And as we will explain below, there is no basis

5

supporting a claim that any covered work was performed by MCC II between July 30, 2002 and December 31, 2002, the end of the period covered by Mr. Wolf's audit.

An employer covered by an ERISA-governed pension or health and welfare plan is required to obtain the records necessary to permit the trustees of the plan to determine the accuracy of the employer's contributions. *See, e.g., Combs v. King,* 764 F.2d 818, 824-25 (11th Cir. 1985). If the employer fails to do so, and the plan presents records reflecting that covered work was performed and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," it is entitled to a judgment based on the amount of work reflected by that showing, unless the employer can rebut the plan's evidence by "com[ing] forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [plan's] evidence." *Id.* at 826. If the employer fails to do so, the court may enter a judgment in favor of the plan, "even though the result be only approximate." *Id. See Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking,* 71 F.3d 1361, 1367 (7th Cir. 1995) (appearing to approve of *Combs*).

Part of the necessary showing under *Combs* is evidence that covered work was performed. *Combs,* 764 F.2d at 826. Our colleague Judge Joan Lefkow discussed this thoroughly in a recent decision which we quote:

> Where trust funds attempt to collect delinquent employer contributions, courts have imposed a presumption in favor of the funds regarding proof of the extent of damages. If the funds establish that the employer has failed to make contributions for employees covered under the collective bargaining agreement and they also establish a breach of section 1059 (failure to keep accurate employee records), then the Funds need only "produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and a reasonable inference," which, in turn, shifts to the employer the burden to

produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inferences to be drawn from the Funds' evidence. *Combs*, 764 F.2d at 826-27; *see also Brick Masons [Pension Trust v. Indus. Fence & Supply*, 839 F.2d 1333], 1338-39 [(9th Cir. 1988)]. The rationale for applying this burden-shifting analysis was set out by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, interpreting a similar record-keeping provision under the Fair Labor Standards Act (FLSA), wherein it concluded that an employee should not be penalized for his employer's failure to keep accurate records of his work such that the employee is unable to prove the extent of damages, and the employer should not be allowed to "keep the benefits of an employee's labors without paying due compensation as contemplated" by the statute. 328 U.S. 680, 687 (1946). *See also Combs*, 764 F.2d at 827.

The point the Funds miss, however, which is emphasized in *Anderson*, and in the ERISA cases relied on by both parties, is that the Funds must prove the fact of damage. *See Anderson*, 328 U.S. at 688 (The "rule applies only to situations where the fact of damage is itself uncertain."); *Combs*, 764 F.2d at 826-27 (same); *Brick Masons*, 839 F.2d at 1338 (same); *see also Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir.1994) ("We agree ... that ... an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed."); *Steve Gilbert Trucking*, 71 F.3d at 1367 ("*Brick Masons* and *Combs* held that if a trust fund has proved that the employer is liable for delinquent contributions and that the employer has failed to keep adequate records, the burden shifts to the employer to come forward with evidence that the fund's calculations of damages are not accurate."). In these ERISA cases, there was either undisputed evidence that the employees for which the funds sought to recover contributions had performed some covered work, *Brick Masons*, 839 F.2d at 1338-39 (reversing denial of damages to trust funds, stating that "[h]ere, as in *Combs* and *Anderson*, the fact of damage is certain" in that it was "undisputed that the Trust Funds received no contributions for work performed by ... Harris masons even though they did some covered work during the relevant time period" and that the employer failed to keep adequate records regarding the extent of the work performed); *Michigan Laborers'*, 30 F.3d at 697 ("In *Anderson*, the Supreme Court also emphasized that the fact of damage was certain, as in the present case, and that an employer should not be allowed to benefit from the violation of a statutory duty."), or in the one case with a procedural posture akin to the instant case, *Combs*, it appears the issue was not whether unnamed employees were covered but rather the precise calculation of their covered work. *See Combs*, 764 F.2d at 820, 827 (reversing summary judgment for employer where trustees produced evidence in the form of affidavits by two of defendant's employees regarding amount of time worked each day and an affidavit of a certified public accountant who concluded, inter alia, that during the audit period "53,387.75 hours had been worked by the defendant company's classified employees [but t]he company [sic] had reported and remitted contributions for 35,115.12 hours, resulting in an unreporting of 18,272.63 hours.").

> Here, by contrast, the Funds have not identified any employee who did work covered under the collective bargaining agreement with Local No. 1 who was paid in cash for the audit period.

*Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1 Welfare Fund,* No. 00 C 1615, 2002 WL 1610980, at *5-6 (N.D. Ill. July 22, 2002).

In this case, the Funds presented no evidence at the prove-up hearing that any employee of Mr. McDaniel, MCC I, or MCC I performed work covered by the relevant agreements with the Laborers Union and the Funds (except for the month of January 2001, which we will address shortly); for this the Funds can rely only on whatever is deemed to have been established via entry of the order of default against the defendants. An order of default establishes the truth of all material allegations in the complaint upon which liability is based. *See, e.g., Franco v. Selective Ins. Co.,* 184 F.3d 4, 9 (1st Cir. 1999); *Quirindongo Pacheco v. Rolon Morales,* 953 F.2d 15, 16 (1st Cir.1992); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981); *see also,* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."). But the Funds did not allege in their complaint that Mr. McDaniel or the named entities had performed covered work, thus that proposition is not deemed to have been conceded by the defendants' failure to answer the complaint. And none of the records the Funds submitted at the hearing reflected that covered work had been performed. These records did establish that Mr. McDaniel and his companies had performed construction work during certain periods, but we have no basis to say that any of the work was covered by the Laborers' collective bargaining agreement (as

8

opposed to, for example, some other collective bargaining agreement such as the one Mr. McDaniel had with the Carpenters' Union). And Mr. McDaniel made no such admissions at the hearing.

The only evidence that covered work was performed during the relevant period concerned January 2001; the evidence consisted of Mr. McDaniel's admission to Fund representative Joseph Gilleran that some unspecified amount of work had been done during that period. Mr. McDaniel produced no records for that period; Mr. Wolf's audit provides a sufficient basis for assessing the amount of unpaid contributions; and Mr. McDaniel has not rebutted the audit in this regard. Because the audit report gives a single figure for the months of January through May 2001, to derive the amount due for January 2001 we will take one fifth of the amount for that period. The resulting amounts of unpaid contributions are set forth below, together with 10% liquidated damages as provided by the relevant agreements, plus interest.[1]

| Fund | Unpaid contribs. | Liquidated dams. | Interest | Total |
|---|---|---|---|---|
| Welfare Fund | $989.00 | $98.90 | $93.96 | $1,181.86 |
| Pension Fund | $716.00 | $71.60 | $68.02 | $855.62 |
| Training Fund | $50.00 | $5.00 | $4.75 | $59.75 |
| Dues | $44.00 | $4.40 | $4.18 | $52.58 |
| MCIAF/Safety | $9.00 | $0.90 | $0.86 | $10.76 |
| LECET | $15.00 | $1.50 | $1.43 | $17.93 |
| TOTAL | $1,823.00 | $182.30 | $173.19 | $2,178.49 |

The Funds are also entitled to recover their audit costs and attorney's fees, for the period

---

[1] We have approximated accrued interest at an effective overall rate of 9.5% based on the figures used in the proposed totals set forth in Paragraph 5 of Mr. Gilleran's affidavit.

following the naming of Mr. McDaniel as a defendant in January 2003 (including the drafting of the amended complaint in which he was first named). Though it might be objected that it is unreasonable to require payment of the full amount of the audit costs and attorney's fees claimed in light of our limitation of recovery of unpaid contributions discussed above, the fact is that the work required of the Fund, its counsel, and its auditors resulted almost entirely from Mr. McDaniel's obstinateness, which in turn was based on an erroneous claim as to when the first McDaniel Construction Corp. was dissolved and an erroneous understanding of the law applying to dissolved entities that carry on business following dissolution. If Mr. McDaniel had been more forthcoming, rather than requiring the Funds to keep dragging him back into Court to obtain basic information to which they were legally entitled, this matter would have come to a conclusion much earlier, likely without most of the expenditure for attorney's and perhaps without any of the audit costs. The amounts claimed for the legal and auditing work are reasonable for the post-January 7, 2003 period. After deducting from the total of $10,028.62 requested by the Funds the amounts claimed for attorney's fees and expenses preceding January 7, 2003 (21.9 hours of attorney time at $175 per hour, a total of $3,832.50, plus expenses of $870.64, a grand total of $4,703.14), the net amount of attorney's fees and expenses awarded is $5,325.48. The cost of the audit, which we also award to the Funds, was $383.00.

## Conclusion

For the reasons stated above, plaintiffs' motion for entry of default judgment in sum certain [docket # 31-1] is granted. Judgment is entered in favor of the plaintiffs and against defendant Alexander McDaniel in the amount of $7,886.97 ($2,178.49 contributions, liquidated damages and penalties; $5,325.48 attorney's fees and expenses; $383.00 audit costs). Plaintiffs'

claims against the current McDaniel Construction Corp. are dismissed.

Date:   December 22, 2003

                                                    _____
                                                    MATTHEW F. KENNELLY
                                                    United States District Judge